# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

LESLEE CAMERON,

       *Plaintiff,*

v.                        **Case No. 4:15cv315-MW/CAS**

SUPERMEDIA, LLC, d/b/a
DEX MEDIA,

       *Defendant.*

_____/

## ORDER RECONSIDERING DISCOVERY MOTIONS

This is an employment case. Defendant[1] sought to compel discovery of Plaintiff's five-year medical history and extend the discovery period to explore that territory. This Court rejected the wide-ranging journey that Defendant insisted upon and denied both motions. Defendant is back with a more appropriate request and asks for reconsideration. This order partially grants and otherwise denies the reconsideration motion.

---

[1] Defendant suggests that it is incorrectly named in the amended complaint. *E.g.*, ECF No. 22, at 1 n.1. The parties need to confer and file a status report stating whether they stipulate to an amendment to correct Defendant's name.

1

I

The reconsideration motion paints a slightly better—though probably not yet complete—picture of the essential facts. In her amended complaint Plaintiff asserts that she began working for Defendant as a marketing consultant on April 1, 2010. ECF No. 1-3 ¶ 6. Apparently she traveled a lot as part of the job. She alleges that a regional director began harassing her in April 2012. ECF No. 1-3 ¶ 7. In December 2012, Plaintiff complained to human resources. ECF No. 1-3 ¶ 10. Defendant fired Plaintiff on November 11, 2013. ECF No. 1-3 ¶ 12.

In this lawsuit Plaintiff claims that Defendant discriminated against her because of gender and religion and fired her because she complained about these unlawful practices. ECF No. 1-3. For all three claims, Plaintiff seeks damages for, among other things, mental anguish, emotional distress, and so forth. *Id*. ¶¶ 24, 34, & 41. She did not assert a separate tort claim founded on a psychological injury, say the tort of outrage. But she did fairly allege that her emotional injuries are "permanent and continuing." *Id*.

Once Defendant removed the case from state court, the discovery period began with the entry of the initial scheduling order

on June 8, 2015. ECF No. 3 ¶ 1. Four months later, in Interrogatory No. 5, dated October 28, 2015, Defendant asked Plaintiff to identify all medical practitioners "from whom [Plaintiff] ha[s] received consultation, treatment, and/or examination *for any physical, mental, or emotional illness, injury, or condition* from January 1, 2010, to the present, list the address of each and their specialty of practice; and describe briefly the reason for the service(s) and the date(s) on which the service was provided." ECF No. 16, at 2 (emphasis added). Requests for Production 1 and 3 sought corresponding documents. Plaintiff's timely response to Interrogatory No. 5 was only this:

> Dr. Nitan Bawa, 155 Crystal Beach Drive, #121, Destin, FL; 850-424-7320; Area of Practice: Internal Medicine; Reason for services: he treated me for depression anxiety[,] and high blood pressure; Dates of service: During my last few months of employment.

ECF No. 22, at 3 n.2. Defendant inferred from this response that Plaintiff was asserting that Defendant had caused that harm and that harm caused Plaintiff to seek out Dr. Bawa's treatment. ECF No. 22, at 2. But the record has no other indication that Plaintiff was making that particular claim.

3

At Defendant's request, Plaintiff signed a medical release authorizing Defendant to obtain records from Dr. Bawa's office directly with a subpoena. ECF No. 16. It appears that Defendant's subpoena went to Dr. Bawa on December 3, 2015, Defendant sent the release to Plaintiff on December 9, and Plaintiff sent back the signed release on December 15. Defendant says it got these records sometime in February 2016. ECF No. 22, at 2.

Defendant says those records show that Plaintiff had been seeing Dr. Bawa for much longer than the "few months" noted in her interrogatory response and that the initial visit to Dr. Bawa was to refill a prescription for two anti-anxiety medications. ECF No. 16, at 3. More specifically, Defendant elaborates (in its reconsideration motion) that the records show that Plaintiff saw Dr. Bawa as early as 2011, after she started working for Defendant but *before* the alleged harassment occurred. ECF No. 22, at 2.[2]

In further support of reconsideration, Defendant points to a February 12 email from Defendant's lawyer to Plaintiff's lawyer stating, in relevant part, the following:

---

[2] None of these records are in the record of this case.

4

Jim, it appears that Cameron **lied** in her interrogatory responses about her health care providers.  She disclosed only Dr. Bawa, but in her discussions with Bawa she states that she has another doctor in Tallahassee who she sees.  Given her multiple problems and medications (anxiety, depression, insomnia, and apparent alcoholism) all of which were present before and during her employment by Dex, it appears to me that she's hiding something.  Can you please discuss this with her and get us supplemented interrogatory responses identifying **_all_** her health care providers ASAP.

ECF No. 22-1, at 2. According to Defendant, Plaintiff's lawyer did not respond. But in response to the initial motion to compel, Plaintiff asserted that she provided an amended answer on February 23. ECF No. 20, at 3. That amended answer is not in the record. In its motion to compel Defendant stated that a March 25 amended answer was dated February 23. Defendant doesn't address the issue in its reconsideration motion.

In a deposition on February 26, 2016, Defendant questioned Plaintiff about her medical history. This is the only exchange in the record:

        A.      Well, it seems that the -- my medical
  records, I didn't provide everything, but --

        Q.      Okay.

        A.      -- I've addressed that since.

        Q.      Okay.  So we're missing -- we're missing
  medical records from you.  Is there a reason why you
  didn't disclose the other -- the -- your medical
  providers in your interrogatory responses the first
  time?

        A.      They -- they truly just slipped my mind.  I
  worked seven months in Tallahassee and six months in
  Destin, so I recalled my doctor -- my primary care
  doctor that I had in Destin, but there are a few
  occasions, since I was away from home for so many months
  out of the year, that I had to go to a walk-in clinic in
  Tallahassee.

        Q.      Okay.  So other than -- other than the
  missing medical provider information, is there any other
  information that you became aware of or recalled after
  the day you signed these responses that would in any way
  change or supplement the responses in this Exhibit 1?

        A.      Not that I'm aware of.

ECF No. 16-1, at 3. This exchange suggests that Plaintiff did sub-

mit an amended answer before the deposition. From its limited na-

ture, this Court cannot say whether Defendant's lawyer inquired

further about who treated Plaintiff for depression, anxiety, and

high blood pressure, or when.

        Defendant says that it followed up on March 7 (email),

March 11 (phone), and March 28 (email). ECF No. 16, at 5. Only

the last of these is in this record (more on this later).

On March 25 a paralegal working for Plaintiff's lawyer provided Defense counsel with amended answers to interrogatories. ECF No. 22-2. Defendant says that Plaintiff listed additional medical providers but "failed to list any other medical provider who treated her for depression, anxiety, or high blood pressure." ECF No. 16, at 5. Defendant also says that in the amended answer Plaintiff maintained that she started seeing Dr. Bawa in the last few months of employment. ECF No. 16, at 5.

The email sending the amended answer is an exhibit to Defendant's reconsideration motion. ECF No. 22-2, at 3. The actual amended answer is not in the record. So it's hard to assess its quality. It's also unclear how Defendant was able to determine that whoever originally treated Plaintiff for these conditions was not included in the amended answer. In an email back to Plaintiff's lawyer's paralegal an hour later, Defendant's lawyer said this:

Hi Elizabeth –

Thank you for these. However, they do not appear accurate. Dr. Bawa's records begin with refilling Ms. Cameron's prescription for Xanax and Valium. Therefore, those drugs had to be prescribed by a physician prior to Plaintiff's first visit with Dr. Bawa. Nothing in Plaintiff's amended interrogatory responses identifies a physician who would have prescribed those medications. Can you please contact Ms. Cameron and ask her who first prescribed Xanax and Valium to her, and if she can provide us with the name and address of the health care professional in question.

Thanks!

ECF No. 22-2, at 2. On March 28, at 11:42 a.m., the paralegal

wrote back the following:

She believes it may have been Dr. William Kerek who was her family doctor in Akron, Ohio.

**Address:** 75 Arch St #102, Akron, OH 44304
**Phone:**(330) 376-4445

ECF No. 22-2, at 2. Less than an hour later, Defendant filed its

motion to compel. ECF No. 16.

The relief Defendant requested was broad. Initially Defend-

ant asked "to compel Plaintiff to turn over the names of *all* of her

medical providers and to provide Defendant with the appropriate

signed medical releases so that Defendant may obtain copies of

Plaintiff's medical records." ECF No 16, at 1–2. Later, Defendant

restated its request as this:

> For the reasons set forth above, and after attempting to seek voluntary compliance, Plaintiff has failed to properly and adequately respond to Defendant's requests for production and interrogatories. As such, Defendant moves this Court to enter an order compelling Plaintiff to (i) identify the health care provider or providers who first treated her for anxiety and/or depression and/or first prescribed to her Xanax, Valium, and/or any other anxiety and/or depression medication; (ii) disclose the names of *all* health care providers who treated her from January 1, 2010, to the present; and (iii) immediately produce signed medical releases to Defendant so that Defendant may subpoena Plaintiff's medical records.

ECF No. 16, at 10.

8

This Court ordered Plaintiff to file an expedited response identifying what sort of damages she was claiming. ECF No. 19. Plaintiff responded that she was only seeking damages for "garden-variety" emotional distress. ECF No. 20, at 2.

Concerned with the broad scope of the inquiry and the lack of any attempt to narrow it, this Court denied the motion. ECF No. 21. Defendant moves for reconsideration. ECF No. 22.

II

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." A court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which implicitly covers privacy interests. *See* Fed. R. Civ. P. 26(c).

The law governing discovery of a plaintiff's medical records for purposes of emotional distress damages in a case like this is,

frankly, all over the map. This is a good summary of the issues:

> When it comes to these cases, courts frequently struggle with what Federal Rule of Civil Procedure applies to their production, the scope of the production, and privilege and waiver issues. Courts often conflate privilege/waiver with relevancy, medical records with medical examinations, and generic medical records with mental-health-related medical records.

*See* Megan I. Brennan, *Scalpel Please: Cutting to the Heart of Medical Records Disputes in Employment Law Cases*, 41 Wm. Mitchell L. Rev. 992, 993 & n.4 (2015) (quotation omitted).[3] Most important here, "[c]ourts take vastly different views on what should fall within the substantive scope of discoverable medical records." *Id.* at 1012.

At the risk of stating the obvious, a claim for emotional distress damages (or its various synonyms) could involve a broad range of potential emotional or psychological injuries and physical manifestations of those conditions. What's discoverable depends on what's claimed. "The critical inquiry is the nature and severity of the claimed emotional harm." *See Flowers v. Owens*, 274 F.R.D. 218, 221 n.4 (N.D. Ill. 2011). The scope of that inquiry is "limited to whether, and to what extent, the alleged harassment caused [a

---

[3] This Court has found Professor Brennan's article very useful in considering this issue.

plaintiff] to suffer emotional harm," and the defendant "may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress." *Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 223 (S.D.N.Y. 1994). A defendant is entitled to production of medical records that have "a logical connection to the plaintiff's claims of injury." *St. John v. Napolitano*, 274 F.R.D. 12, 17 (D.D.C. 2011). A defendant is not automatically entitled to "full disclosure all plaintiff's medical records and unrestricted as to time or circumstance" simply because some level of emotional distress is claimed. *See Bottomly v. Leucadia Nat.*, 163 F.R.D. 617, 619 (D. Utah 1995); *see also Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 266 (D. Minn. 2007); *St. Johns*, 274 F.R.D. at 16. The "contention that any physical malady might cause emotional distress . . . scarcely gives defendants a license to rummage through all aspects of the plaintiff's life in search of a possible source of stress or distress." *See E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 123 (W.D.N.Y. 2009) (quotation omitted).

At this Court's order, Plaintiff stated that she was seeking only "garden variety" emotional distress injuries. This is somewhat less specific than this Court had hoped for. That term, which this

Court admittedly used in its previous order, is often used to distin-guish claims for emotional distress which result in a waiver of the psychotherapist-patient privilege from those that don't result in a waiver. *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 (N.D. Ga. 2001). So far as this Court can tell, there is no claim of privilege in this case. But, apart from questions of privilege, cases discussing the concept are useful for evaluating relevance rather than privilege.

As one court has recognized, there is often a dispute about "what could grow in the garden." *Flowers*, 274 F.R.D. at 220. A plaintiff might only claim the harm of "negative emotions that she experienced essentially as the intrinsic result of the defendant's alleged conduct." *See Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999). This is "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized." *Kunstler v. City of New York*, No. 04CIV1145(RWS)(MHD), 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006). With a claim so lim-ited, medical records concerning other potential causes for emo-tional distress have only marginal relevance, if any, to the issue of damages. *See Womack v. Wells Fargo Bank, N.A.*, 275 F.R.D. 571, 573 (D. Minn. 2011); *Kennedy v. Cingular Wireless, LLC*, No. 206-

cv-0975, 2007 WL 2407044, at *2 (S.D. Ohio Aug. 20, 2007); *Sanders v. D.C.*, No. CIV.A. 97-2938(PLF), 2002 WL 648965, at *5 (D.D.C. Apr. 15, 2002); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 634–635 (S.D. Cal. 1999).[4]

Up the scale are more significant claims of emotional distress resulting from a defendant's conduct, say, depression, anxiety, or high blood pressure. The primary case cited by Defendant, *Crawford v. Babbitt*, 186 F.3d 1322 (11th Cir. 1999), stands for the unremarkable point that if a plaintiff claims that a defendant caused emotional distress, then records tending to prove that claim (or the lack of them) might be relevant. *Id.* at 1327.[5] Medical records bearing specifically on the physical or mental manifestations of emotional distress which a plaintiff claims to be suffering as a result of the defendant's conduct are relevant. *See Sandoval, Inc.*, 267 F.R.D. at 269. Discoverable information also includes the iden-

---

[4] Medical records may of course be relevant for reasons other than emotional distress damages. *See, e.g.*, *Barlow v. Dupree Logistics, LLC*, No. CIV.A. 1:14-BE-1808, 2015 WL 4646812, at *4 (N.D. Ala. Aug. 5, 2015).

[5] For example, in *Crawford* the plaintiff claimed that harassment "upset" her and the stress of the harassment led to a bleeding ulcer and other physical problems for which she had seen a doctor, but declined to produce substantiating records to the agency considering that claim. 186 F.3d at 1324.

tities of medical providers which the plaintiff has seen in the subject time frame for diagnosis or treatment for mental, emotional and psychological issues, regardless of the cause, physical manifestations of those issues, and corresponding documents or testimony not subject to privilege. *See*, *e.g.*, *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 343 (D. Minn. 2011); *Kersten v. Old Dominion Freight Line, Inc.*, No. CIV. 11-1036 DSD/JSM, 2011 WL 5373777, at *2 (D. Minn. Nov. 1, 2011).[6] This is because "a plaintiff should not be permitted to put before the factfinder only those aspects of claimed emotional harm and similar intangible harms that favor his or her position, without revealing that plaintiff already had some preexisting problems that could cast a cloud on the issue of causation." *Puglisi v. Centerpoint Properties*, No. 05C6592, 2008 WL 410636, at *5 (N.D. Ill. Feb. 13, 2008).[7] But it "cuts both ways . . . the aggravation of a preexisting ailment or condition may be

---

[6] Some courts also allow discovery of medical records concerning other conditions that "the defendant has established, through other discovery, may have caused the plaintiff emotional distress." *St. Johns*, 274 F.R.D. at 17. This Court will address a discovery request of that nature if and when it becomes necessary to do so.

[7] The *Puglisi* court was considering admissibility not discoverability, but the point is the same in either context.

taken into account in determining damages." *Id*.[8] Putting aside discoverability, in this Court's experience, folks that try to ride that tiger in front of a jury sometimes end up inside. With that framework in mind, this Court turns back to this case.

### III

It's rare to find a legitimate discovery dispute that has but one cause. More often it's a chain of events which ultimately leads to a waste of time and effort. This case is not the rare exception.

For starters, Defendant missed the point of the initial scheduling order by waiting four months to make a discovery request. Ideally, Defendant would have begun by asking Plaintiff to describe what kind of emotional distress damages she was claiming and then made narrowly tailored discovery requests justifiable in time and circumstance to the facts of the case. *See* Brennan, *supra*, at 1024. That would have allowed Defendant to ascertain whether

---

[8] As noted, there is no claim of privilege in this case. So this Court does not decide any issue of waiver. But a useful starting point might be *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551 (N.D. Ga. 2001), where the court said that a litigant places his mental condition in controversy—and thus waives the psychotherapist-patient privilege "when one or more of the following factors are present: (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of claim for emotional distress damages; and/or (5) plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35." *Id*. at 554.

Plaintiff was claiming that Defendant caused her depression, anxiety, high blood pressure, or other conditions or symptoms, and then make additional discovery requests. Defendant had it backwards, first asking that Plaintiff identify every health care provider for the past five years, and making Requests for Production 1 and 3, which sought corresponding documents. For this kind of case those requests overreach.

For her part, Plaintiff didn't make timely objections to those requests to limit properly their reach. Instead, with the assistance of counsel, she chose to simply respond as though the requests were narrowed in some way. This "just answer to avoid a fight" response is perhaps understandable though not acceptable—it puts the goal of discovering relevant evidence fairly and efficiently farther out of reach. With that said, this Court is more likely to excuse a failure to make a timely objection if the objection is well taken and where the information sought raises privacy concerns, such as medical records.

Another good point is that parties "should try to avoid taking unjustified extreme positions." *See* Brennan, *supra*, at 1031. Some might have suspected Plaintiff's approach, not assumed that a few months of treatment for certain conditions related to emotional

distress by one doctor was the whole of a person's five-year medical history, and clarified with opposing counsel as needed. When Defendant got those medical records and it became known that Plaintiff's answer was inaccurate, it looks like Defendant wasn't primarily interested in focusing the request on what matters. From Defendant's representations, it seems that Plaintiff might have failed to say when and where her treatment began, didn't accurately disclose the full time frame of the treatment, or say that she had seen another doctor while on the road. Whether the conclusion that the person "**lied**" is the most likely one is debatable. But Plaintiff probably knew from her lawyer that the records would be turned over to the other side. Instead of making a tailored request Defendant insisted that Plaintiff identify "***all***" of her healthcare providers in an apparent effort to find what she was "hiding." Defendant may have caught more flies with honey.

If it wasn't explicit from the previous order, this Court denied the motion to compel because the question actually asked (identify all health care providers and authorize release of records) was overbroad and the record did not disclose that the potentially relevant question (identify which doctor initially prescribed medication for anxiety and depression) had ever been put to Plaintiff.

In support of reconsideration, Defendant has now established that it *did* put that question to Plaintiff—in an email to Plaintiff's lawyer's paralegal less than an hour before Defendant filed its motion to compel. That's probably not the best way to make or narrow a discovery request. Nor is it the sort of meaningful conference that the local rules require before bringing a motion to compel. *See* N.D. Fla. Loc. R. 7.1(B) ("An email or other writing sent at or near the time of filing the motion is not a meaningful conference"). And if it turns out that whichever doctor initially prescribed that medication only did so before January 1, 2010, then it's not covered by Interrogatory No. 5 at all and Defendant has no right to compel an answer.

In its reconsideration motion, Defendant says that it "seeks only those records that relate directly to Plaintiff's prior treatment for emotional distress and other psychological issues" presumably back to January 1, 2010.  ECF No. 22, at 5. A lingering problem is that neither party ever really explained to this Court what sort of emotional distress Plaintiff claims that Defendant caused her to suffer. If Plaintiff is claiming that Defendant caused her depression, anxiety, high blood pressure, or a similar condition, then, so narrowed, Defendant's request is appropriate. And Defendant's

failure to ask the right follow-up question before is partly excused by Plaintiff's failure to respond appropriately to the initial question.

The result is this. If Plaintiff only means to assert a claim for emotional distress limited to the normal embarrassment and humiliation from harassment or losing her job; that is, damages intrinsic to Defendant's conduct, then Plaintiff must so inform Defendant. If Plaintiff makes that choice, she "will be precluded at trial from introducing the fact or details of her treatment; she may not offer evidence through any witness about symptoms or conditions that she suffered (*e.g.,* [depression, anxiety, and high blood pressure]) and she will not be permitted to offer any evidence regarding a medical or psychological diagnosis." *See Santelli*, 188 F.R.D. at 309.

If Plaintiff means to assert a claim for a more significant emotional or psychological injury, she must provide an amended answer to Interrogatory No. 5 identifying, to the extent she is able to do so, those medical providers which she has seen for diagnosis or treatment for mental, emotional and psychological issues, regardless of the cause, from January 1, 2010, to the present, and

physical manifestations of those issues. She must also produce corresponding records within her possession, custody or control.

This order doesn't require Plaintiff to execute medical releases for her medical records. A reasonable argument might be made that medical records are in a person's "control" under Rule 34. Some courts have required persons to sign a medical release. But there is nothing in the Federal Rules of Civil Procedure that expressly authorizes this Court to compel Plaintiff to sign a release authorizing disclosure of her medical records. *See Fields v. W. Va. State Police*, 264 F.R.D. 260, 263 (S.D.W. Va. 2010); *see also Graham v. Witalec*, No. 5:10cv65, 2011 WL 1335808, at *1 (N.D. Fla. Apr. 7, 2011). The practice of providing releases between the parties is more a matter of convenience to simplify the discovery process.[9] This Court declines to order Plaintiff to do so without a meaningful discussion of the issue. It may make no difference, because Plaintiff apparently doesn't object to signing a release. ECF No. 20, at 6.

---

[9] If a party refuses to sign a release for discoverable medical records, a requesting party must comply with the procedures set forth in the Health Insurance Portability and Accountability Act ("HIPAA") and implementing regulations, in particular 45 C.F.R. §164.512(e)(1)(i). A court order under that provision would issue from this Court. *See* Fed. R. Civ. P. 45(a)(2).

20

IV

Defendant also sought to extend the discovery period for several reasons, to extend the deadline for filing summary-judgment motions, and to move the trial date. ECF No. 17. Primarily Defendant pointed to the medical discovery it sought to obtain from Plaintiff and her medical providers. As this Court denied the motion to compel, this was no reason to extend the discovery period.

Additionally, Defendant pointed to Plaintiff's request to depose five non-party witnesses. Plaintiff opposed enlargement. So this Court concluded that she no longer wished to depose these witnesses. This Court denied the motion to change all those deadlines.

Defendant asks for reconsideration of this ruling as well. ECF No. 22. Regarding the medical records, within three days of Plaintiff serving an amended answer to Interrogatory No. 5, if any, Defendant may issue a subpoena to any medical providers identified by Plaintiff with a medical release authorization, should Plaintiff choose to provide one. If Plaintiff does not provide such an authorization, this Court will entertain a request for an appropriate order within the same time period. This Court will also entertain a motion to extend the discovery period for the purpose of

21

deposing Plaintiff or a medical provider about those medical records produced, if any. This medical discovery apparently relates only to emotional distress damages, so it should not impact summary judgment or the trial date.

This Court declines to extend the discovery period for the purpose of deposing the other five witnesses at this time. Though the record is unclear it suggests—and Defendant's initial motion to extend cites as justification, ECF No. 17 ¶ 6—that Plaintiff requested these depositions, or at least the date. The depositions were scheduled for March 2016, the last month of discovery. Defendant canceled on five days' notice. Plaintiff's lawyer was unavailable for the dates Defendant proposed later that month.

Now, on reconsideration, Defendant asserts that it's been "denied the ability to depose several key fact witnesses prior to the close of discovery." ECF No. 22, at 6. This Court can't say who these witnesses are or whether they are important. And perhaps Defendant sought to depose these witnesses all along and accommodated Plaintiff's requested schedule. Defendant should not be penalized if Plaintiff wanted to wait until the end of discovery for depositions. But this Court can't make that finding on this record either. As

there is no good cause shown, the discovery period will not be extended for that purpose at this time.

Accordingly,

**IT IS ORDERED:**

1. Defendant's motion for reconsideration, ECF No. 22, is **GRANTED** in part and **DENIED** in part.

2. On or before April 25, 2016, Plaintiff must serve Defendant with either (a) a statement limiting her emotional distress damages; or (b) an amended answer to Interrogatory No. 5 and production of corresponding documents which are within her possession, custody, or control. Within three days of the service of those documents, Defendant may issue appropriate subpoenas or apply for a court order to obtain medical records.

3. On or before April 25, 2016, the parties must confer and file a status report stating whether they stipulate to an amendment to the complaint to correct Defendant's name.

**SO ORDERED on April 19, 2016.**

                    **s/Mark E. Walker               **
                    **United States District Judge**